**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas McDermott, | No. CV-20-00539-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Perfection Collection LLC, | |
| Defendant. | |

Pending before the Court is Plaintiff Thomas McDermott's ("Plaintiff") Motion for Default Judgment. (Doc. 38). The Court now rules on the motion.

## I.    BACKGROUND

Around 2006, Plaintiff signed up for Monitronics/Brinks Home Security's home alarm monitoring system. (Doc. 38-1 at 1). In 2011, Plaintiff ceased payments on the account. (*Id.* at 1–2). In 2019, the account was placed with Defendant, Perfection Collection, LLC, for collection. (*Id.* at 2). In 2020, Plaintiff learned that the collections account appeared on his credit reports because Perfection Collection reported the collections account to Experian and Trans Union, LLC. (*Id.*). Plaintiff disputed the collections account to Experian and Trans Union, explaining that the collections account should not appear on his credit report because it is over seven years old. (*Id.*). Trans Union responded to Plaintiff, averring that the collections account information was accurate. (*Id.*).

Thereafter, the collections account remained on Plaintiff's credit report because Perfection Collection continued to report the collections account to Trans Union. (*Id.*).

Plaintiff asserts that the collections account is the only negative account appearing on Plaintiff's credit report, and it has caused his credit to decrease by about 20 to 30 points. (*Id.*). Plaintiff states that, in 2020, he attempted to refinance his home, but, due to his low credit score, he received terms and interest rates that were not cost-effective, and he subsequently chose not to refinance. (*Id.*).

Plaintiff filed suit on March 15, 2020, naming both Trans Union and Perfection Collection as Defendants. (Doc. 1). Trans Union answered Plaintiff's complaint (Doc. 7) and was later dismissed from the lawsuit. (Doc. 34). Perfection Collection failed to answer Plaintiff's complaint, and, on May 8, 2020, Plaintiff filed a Request for Entry of Default against Perfection Collection. (Doc. 18). On the same day, the Clerk of the Court entered default accordingly. (Doc. 20). On February 19, 2021, Plaintiff submitted his Motion for Default Judgment against Perfection Collection. (Doc. 38).

## II.   DEFAULT JUDGMENT

If a defendant fails to plead or otherwise defend an action after being properly served with a summons and complaint, default judgment may be entered pursuant to Federal Rule of Civil Procedure 55(a). Rule 55 requires a "two-step process" that consists of (1) seeking the clerk's entry of default and (2) filing a motion for entry of default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Once the clerk has entered default, a court may, but is not required to, grant default judgment under Rule 55(b) on amounts that are not for a sum certain. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam). In considering whether to grant default judgment, a court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). When considering these factors,

Defendant is deemed to have admitted all well-pleaded allegations in the complaint but does not admit allegations related to damages or those that do no more than "parrot" the elements of a claim. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

### a.      Possibility of Prejudice

Under the first *Eitel* factor, the Court "considers whether a plaintiff will suffer prejudice if a default judgment is not entered." *Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12–4358 MMM PLAX, 2013 WL 10155707, at *3 (C.D. Cal. May 14, 2013). The possibility of prejudice exists when a court's failure to enter default judgment denies a plaintiff judicial resolution of the claims presented or leaves him without other recourse for recovery. *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). In the instant lawsuit, Defendant has failed to answer Plaintiff's complaint or otherwise plead. Thus, if Plaintiff's motion for default judgment is denied, Plaintiff will likely be left without recourse for recovery. Therefore, this factor weighs in favor of granting Plaintiff's motion.

### b.      Merits of Plaintiff's Substantive Claim and Sufficiency of Complaint

For the second and third factors, considered here together, the Court must "assess the substantive merit of [a plaintiff's] claim and the sufficiency of his pleadings." *Mnatsakanyan*, 2013 WL 10155707, at *3. These two factors favor entering default judgment when, considering the complaint and relevant documentary evidence, a plaintiff "state[s] a claim on which [he] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also J&J Sports Prods., Inc. v. Molina*, No. CV15-0380 PHX DGC, 2015 WL 4396476, at *1 (D. Ariz. July 17, 2015) (considering affidavits attached to the motion for default judgment).

Plaintiff states that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681. (Doc. 38 at 4). Plaintiff specifically asserts that Defendant, as a "furnisher" of information under the FCRA, willfully and negligently violated 15 U.S.C. § 1681s-2(a) by continuously reporting Plaintiff's collections account—which was more than seven years old—to consumer reporting agencies. (*Id.* at 4–5, 8). Under § 1681s-2, furnishers of

information have a duty to provide consumer reporting agencies with accurate information about consumers. 15 U.S.C. § 1681s-2(a). Further, when a consumer reporting agency notifies a furnisher about a dispute over inaccurate information, the furnisher must investigate the disputed information, review all relevant information provided by the consumer reporting agency, report the results of the investigation to the consumer reporting agency, and modify, delete, or permanently block from all consumer reporting agencies any information found to be inaccurate, incomplete, or unverifiable. §§ 1681s-2(b)(1), 1681i(a)(1). Thus, to prevail on his noncompliance claim, Plaintiff must show that Defendant failed to satisfy the FCRA requirements. *See also Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1058 (9th Cir. 2002) (holding that § 1681s-2(b) creates "a cause of action for a consumer against a furnisher of credit information").

In his complaint, Plaintiff asserted that Defendant furnished inaccurate information to Trans Union by reporting a collections account that became delinquent in 2011 and thus "is obsolete from credit reporting." (Doc. 1 at 3). Section 1681c(a)(4) of the FCRA states that a consumer reporting agency cannot make a consumer report that contains "accounts placed for collection . . . which antedate the report by more than seven years." Plaintiff then stated that when he notified Trans Union of the inaccurate information on January 20, 2020, Trans Union notified Defendant of the dispute and Defendant investigated the dispute and delivered the results back to Trans Union. (*Id.* at 3–4).

However, Plaintiff then argued that Defendant failed to satisfy the FCRA requirements by "willfully and negligently failing to conduct an investigation . . . review all relevant information . . .[or] report the inaccurate status of the inaccurate information to all credit reporting agencies to whom it reported." (*Id.* at 6). These allegations are inconsistent with facts from Plaintiff's complaint as described in the paragraph above. Plaintiff repeated these contradictory allegations in his motion without any clarification on the inconsistencies. (Doc. 38 at 8, lines 7–16).

Additionally, Plaintiff did not provide adequate factual support to explain how Defendant acted "willfully and negligently" in violation of the FCRA. (Doc. 1 at 6). *See*

*also Eason v. Indymac Bank, FSB*, No. CV 09-1423-PHX-JAT, 2010 WL 1962309, at *2 (D. Ariz. May 14, 2010) (plaintiff's complaint was insufficient "due to the lack of specific facts alleged"); *Messano v. Experian Info. Solutions, Inc.,* 251 F.Supp.3d. 1309, 1316 (N.D. Cal. 2017) (plaintiff's complaint only contained "bare conclusory statements" alleging that defendant acted "knowingly, intentionally, and in reckless disregard for credit reporting industry standards"). While Plaintiff provided some facts to support his conclusions, Plaintiff could have alleged specific facts regarding Defendant's actions to clear up the inconsistencies mentioned above (e.g., explaining how Defendant could have "willfully and negligently fail[ed] to conduct an investigation" after stating previously that Defendant had in fact conducted an investigation). (Doc. 1 at 4, 6).

Nonetheless, in an affidavit submitted with his motion, Plaintiff stated that after Defendant reported its investigation findings to Trans Union, Trans Union informed Plaintiff that the disputed information was valid and would continue to be reported. (Doc. 38-1 at 3). A thorough investigation by Defendant would have revealed that the reported account became deficient over seven years ago, in 2011, and thus was erroneously reported. Accordingly, since Defendant continued to report the inaccurate information to credit reporting agencies to Plaintiff's detriment, Plaintiff has a claim on which he may recover. Because Plaintiff does not sufficiently allege specific facts to support his claim, the second and third factors weigh only slightly in favor of default judgment.

### c.   Sum at Stake

Under the fourth factor, the Court must compare the amount of money involved in relation to the seriousness of the defendant's misconduct. *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002). Under § 1681n, a plaintiff can collect any actual damages sustained or statutory damages of up to $1,000 for willful noncompliance with the FCRA, and reasonable attorney's fees and costs. Under § 1681o, a plaintiff can collect any actual damages sustained because of the defendant's negligent noncompliance with the FCRA and reasonable attorney's fees and costs.

Here, Plaintiff seeks $1,000 in statutory damages and $3,500 in actual damages, in

addition to attorneys' fees and costs, for Defendant's willful and negligent noncompliance with the FCRA. (Doc. 38 at 7). Plaintiff alleges that Perfection Collection, LLC acted both willfully and negligently, thus violating both § 1681n and § 1681o and entitling Plaintiff to statutory and actual damages. (*See id.*). While Plaintiff seeks both statutory and actual damages, however, he alleges only one pattern of conduct violating the FCRA in one count of his complaint against Perfection Collection, LLC. (*See* Doc. 1 at 6–7). The same violation of the FCRA cannot support separate awards under both § 1681n and § 1681o as the willfulness requirement for § 1681n encompasses the negligence requirement of § 1681o. *See Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020) (noting that a negligent violation of the FCRA requires that plaintiff show defendant "acted pursuant to an objectively unreasonable interpretation of the statute," and that a willful violation requires that plaintiff show "not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless"); *Ashcraft v. Welk Resort Grp.*, Corp., No. 216CV02978JADNJK, 2021 WL 950658, at *10 (D. Nev. Mar. 12, 2021) (referencing the same standards); *Romero v. Monterey Fin. Servs., LLC*, No. 19CV1781 JM (KSC), 2021 WL 268635, at *2–*4 (S.D. Cal. Jan. 27, 2021) (same).

Because Plaintiff asserted a viable claim for a willful or negligent violation of the FCRA under § 1681n or § 1681o, he may receive either actual or statutory damages along with attorneys' fees and costs.[1] *Steinmetz v. Experian Info. Sols., Inc.*, No. 219CV00067APGGWF, 2019 WL 3082720, at *2 (D. Nev. July 15, 2019) ("Any person who willfully violates the [FCRA] with respect to any individual may be liable to that individual for either actual or statutory damages, costs of action and attorney's fees, and possibly punitive damages."); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (noting that proving a willful violation of the FCRA entitles plaintiff to either statutory or actual damages); *see Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1317 (D.

---

[1] While § 1681n also allows for punitive damages, Plaintiff did not request punitive damages in his Motion for Default Judgment. (*See* Doc. 38).

Or. 2008) ("Under FCRA, statutory damages are awarded as an alternative to actual damages."); *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 974 (C.D. Cal. 2007) (holding that "a consumer whose FCRA rights have been violated may elect either actual or statutory damages"). Plaintiff alleges that he suffered actual damages and seeks $3,500 in addition to attorneys' fees and costs. (Doc. 38 at 7). This factor weighs in favor of granting the motion because Plaintiff seeks damages that are within the permitted range.

### d.   Possibility of Dispute

The fifth factor assesses whether there is a possibility of dispute regarding any material facts in the case. *PepsiCo, Inc.,* 238 F.Supp.2d. at 1177. While Defendant could have disputed the inconsistent facts alleged in Plaintiff's complaint, Defendant has never answered, pleaded, or otherwise appeared in this case. Thus, the fifth factor weighs in favor of entering default judgment.

### e.   Excusable Neglect

Under the sixth factor, the Court considers whether the defendant's default judgment resulted from excusable neglect. *PepsiCo, Inc.,* 238 F.Supp.2d. at 1177. Since the commencement of this lawsuit on March 15, 2020, Defendant has failed to appear. (Doc. 38 at 10). Defendant was served on April 3, 2020. (Doc. 18 at 1). An answer or other responsive pleading was due on April 24, 2020, and Defendant failed to answer or plead by the deadline. (*Id.* at 1–2). No facts provided indicate that the default resulted from excusable neglect. Accordingly, this factor weighs in favor of granting Plaintiff's motion.

### f.   Policy for Deciding on the Merits

The seventh and final factor requires that cases be decided "upon their merits whenever reasonably possible." *PepsiCo, Inc.,* 238 F.Supp.2d. at 1177. However, "[w]hile the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the Court reaches the merits," as evidenced by Fed. R. Civ. P.55(b) (default judgment). *Kloepping v. Fireman's Fund,* No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D.Cal. Feb. 13, 1996). Because Defendant failed to answer or otherwise plead, it is not

reasonably possible for the Court to decide the case upon its merits with only Plaintiff's complaint. *See also G&G Closed Circuit Events, LLC v. Espinoza*, No. CV-18-08216-PCT-JAT, 2020 WL 377095, at *3 (D. Ariz. Apr. 8, 2020) (stating that a defendant's failure to defend an action makes a decision upon the merits "impractical, if not impossible"). Consequently, this factor weighs in favor of default judgment.

### g.  Conclusion

On balance, the *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment. The Court will now consider Plaintiff's requests for damages and attorneys' fees.

## III.  DAMAGES

A consumer may collect actual damages for a defendant's negligent or willful noncompliance with the Fair Credit Reporting Act, 15 U.S.C. § 1681. 15 U.S.C. §§ 1681n–1681o; *see also Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1058 (9th Cir. 2002) (holding that § 1681s–2(b) creates "a cause of action for a consumer against a furnisher of credit information"). Plaintiff alleges that Defendant willfully and negligently violated the FCRA by erroneously reporting his seven-year-old collections account to Trans Union and other agencies both before and after Plaintiff had disputed the information. (Doc. 38 at 4–5).

Under § 1681o, if a defendant was negligently noncompliant with the FCRA, a plaintiff may collect: "in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure," along with reasonable attorneys' fees and costs. Under § 1681n, if a defendant was willfully noncompliant with the FCRA, a plaintiff could collect actual damages or $100 to $1,000 in statutory damages, as well as punitive damages and reasonable attorneys' fees and costs. Because the Court does not need to accept the allegations regarding damages in a plaintiff's complaint as true, the plaintiff must prove that he suffered actual harm that justifies the damages. *Mnatsakanyan*, 2013 WL 10155707, at *6.

When analyzing "negligent" conduct, Plaintiff must have pled "specific allegations

regarding any actual damages that [he] incurred due to [Defendant's] alleged violation." *Messano,* 251 F.Supp.3d. at 1316. Plaintiff claims that he has suffered actual damages due to Defendant's noncompliance, including "lost credit opportunities, harm to credit reputation and credit score, and emotional distress." (Doc. 1 at 4); *see also Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) ("the term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation"); *Acton v. Bank One Corp.,* 293 F.Supp.2d 1092, 1101 (D. Ariz. 2003) (the Ninth Circuit does not require that plaintiff submit objective evidence to demonstrate emotional distress). Specifically, Plaintiff alleges that his credit score decreased about 20 to 30 points. (Doc. 38-1 at 2). Further, Plaintiff contends that the appearance of the collections account on his credit report affected his ability to refinance his home because "the terms and interest rates [he] received were not cost-effective." (*Id.*). Therefore, Plaintiff successfully alleged actual damages based on Defendant's negligent noncompliance.

When analyzing "willful" conduct, courts have held that "willful" includes "knowing and reckless violations." *Mnatsakanyan*, 2013 WL 10155707, at *7. To be found liable for recklessness, Defendant must have acted "not only [in] violation [of] a reasonable reading of the [FCRA's] terms, but . . . ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Here, Defendant's initial reporting of the collections account could have been a mere careless error, but after receiving notice of Plaintiff's dispute, Defendant continued to disseminate the incorrect information to Trans Union and other agencies. Although Defendant investigated the disputed information before it continued to report the information, an adequate investigation would have revealed that the alarm system account became deficient more than seven years prior, in 2011, and was therefore unreportable on Plaintiff's credit report. (Doc. 38-1 at 1). Accordingly, Defendant was likely aware of the incorrect information after its investigation and willfully violated the FCRA by continuing to report the collections account.

Plaintiff seeks $1,000 in statutory damages and $3,500 in actual damages, as well

1  as attorneys' fees and costs. (Doc. 38 at 7). As discussed *supra*, Plaintiff is only entitled

2  either actual or statutory damages here, not both. *See supra* Section II.c. Further, Plaintiff's

3  requests for damages are within the permitted range of § 1681n and § 1681o. *Id.*

4  Accordingly, the Court awards Plaintiff the full amount of his claimed actual damages, but

5  no statutory damages, for Defendant's negligent and willful noncompliance with the

6  FCRA. *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 947 (C.D. Cal.

7  2015), *aff'd sub nom. Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561 (9th Cir. 2017)

8  (finding award of $250,000 for defendant's negligent FCRA violation was not

9  unreasonable after discussing separate awards of $300,000 and $180,000 to plaintiffs for

10  defendants' negligent noncompliance with the FCRA); *see also Newger v. Trans Union*

11  *LLC, et al.*, No. CV-20-00715-PHX-JJT (D. Ariz. Feb. 18, 2021) (granting the same

12  amount of actual damages against the same defendant on similar claims).

13  **IV.   ATTORNEYS' FEES**

14        Under the FCRA, a prevailing plaintiff shall recover "the costs of the action together

15  with reasonable attorney's fees." 15 U.S.C. §§ 1681n(a)(3), o(a)(2). Under this district's

16  local rules, a party seeking attorneys' fees must first show that they are both eligible for

17  the fee award and entitled to it. LRCiv. 54.2(c)(1)–(2). Here, both requirements are

18  satisfied by the Court's entry of default judgment against Defendant because the FCRA

19  allows courts to award reasonable attorneys' fees and costs to a prevailing plaintiff.

20  Because Plaintiff prevailed in this suit, he is entitled to reasonable attorneys' fees and costs.

21        The Ninth Circuit uses the "lodestar" method to calculate the reasonableness of

22  attorneys' fees. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Under

23  that method, a court arrives at a presumptively reasonable fee award by multiplying the

24  number of hours reasonably spent on the litigation by a reasonable hourly rate. *Id.* A court

25  may adjust this figure "upward or downward based on a variety of factors." *Id.* (quoting

26  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)); *see also* LRCiv.

27  54.2(c)(3)(A)–(M) (listing thirteen factors that may "bear[ ] on the reasonableness of the

28  requested attorneys' fee award"). To arrive at the reasonable number of hours component

of the lodestar calculation, a court must review the billing records the prevailing party has submitted and "exclude those hours for which it would be unreasonable to compensate" that party. *Gonzalez,* 729 F.3d at 1203. As for the lodestar's reasonable hourly rate component, the applicant generally has the burden to show that his rates are reasonable in light of the prevailing market rates for attorneys in the forum district with similar skill, experience, and reputation. *Id.* at 1205–06.

Plaintiff seeks to recover $13,628.80 in attorneys' fees and costs. (Doc. 38 at 21). First, Plaintiff successfully showed that his attorneys' hourly rates are reasonable compared to the prevailing market rate of attorneys' in the community. Three of Plaintiff's four attorneys are partners who charged $500 per hour while the fourth attorney charged $300 per hour. (*Id.* at 12). Plaintiff provided evidence of Arizona's increasing hourly rate for an attorney and noted that the average rate of a Phoenix attorney in 2016 was $438 per hour. (*Id.* at 14). For partners specifically, the average rate was $606 per hour. (*Id.*). Although Plaintiff failed to provide updated calculations after 2016, Plaintiff has shown that the hourly rates of his counsel are reasonable.

Second, the billing records of the attorneys reflect reasonable hours for which to compensate Plaintiff. (*Id.* Exhibit E). Plaintiff also described a breakdown of Lauren Ponza's role in the case—the attorney who billed the most hours. Specifically, Ponza "spent 23.5 hours completing the necessary research, drafting of the instant motion, working heavily with Plaintiff to assess damages, and compiling counsel's individual hours spent on this case." (*Id.* at 16). Larry Smith, who spent the second most time on the case at 5.7 hours, was responsible for "investigating Plaintiff's claims, drafting pleadings, and reviewing motions and court orders." (*Id.*).

Finally, Plaintiff provided multiple examples of attorneys' fees awards in similar cases. (*Id.* Exhibit D). Under LRCiv. 54.2(c)(3)(L), "awards in similar actions" is one of the thirteen factors that a court may consider in its reasonableness calculation. Here, the examples provided by Plaintiff evidence that his request is reasonable. Accordingly, the Court awards Plaintiff $13,628.80 in attorneys' fees and costs.

**V.    CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's motion for default judgment (Doc. 38) is **GRANTED** to the extent that damages are awarded consistent with this opinion.

Judgment is entered in favor of Plaintiff Thomas McDermott and against Defendant Perfection Collection, LLC as follows:

1.    $3,500.00 actual damages, as established by Plaintiff's affidavit, for Defendant's negligent violation of the FCRA;

2.    $12,900.00 for Plaintiff's attorneys' fees;

3.    $728.80 for Plaintiff's costs;

4.    Total Judgment in the amount of $17,128.80.

**IT IS FURTHER ORDERED** that, Perfection Collection, LLC being the only remaining defendant in this action, the Clerk of Court shall enter this judgment in favor of Plaintiff and against Perfection Collection, LLC in the amount of $17,128.80 and terminate this matter.

Dated this 15th day of April, 2021.

James A. Teilborg
Senior United States District Judge